# COURT OF ERRORS AND APPEALS.

## JUNE TERM.

## 1872.

RICHARD ROE, casual ejector, and ALFRED CARSON, tenant in possession, defendant below, plaintiff in error, *v.* JOHN DOE on the demise of HARBESON HICKMAN, plaintiff below, defendant in error.

Even a latent ambiguity in the terms of description employed in a devise cannot be explained by parol evidence of the declarations of the testator made after the execution of his will, as to which of the two tracts of land mentioned in it, he intended respectively to devise to each of the devisees named in it.

This case came up on a writ of error to the Superior Court in and for Sussex County, and on a bill of exception filed to the ruling of the court below upon a question as to the admissibility of certain evidence offered on behalf of the defendant in the trial of the case below, and was heard in this court before Bates, Chancellor, and Wootten and Houston, Associate Judges.

It was an action of ejectment by Harbeson Hickman, the plaintiff below, against Alfred Carson, the defendant below, to recover the one undivided half part of a tract of land in Lewes and Rehoboth hundred, devised by Jacob Prettyman in his last will and testament to his son Samuel

Prettyman, and which was, as follows : "First, I give and bequeath to my beloved wife Levisa Prettyman all my estate, both real and personal, for and during her natural life subject to the following restrictions, that is to say, if either my children Samuel, Margaret Ann, or Elizabeth S. Prettyman, upon arriving at age should request to be permitted to occupy their share or portion of my said landed estate hereafter devised to them, they are to be allowed to do so by my said widow, on condition of their paying to my said widow a fair annual rent therefor to be ascertained by any two respectable freeholders chosen jointly by the parties, and not otherwise. Item, I give and bequeath to my well beloved daughter Elizabeth, my house and lot where I now reside, containing about eight acres, more or less, to her, her heirs and assigns forever. Item, I give and bequeath to my aforesaid daughter Elizabeth S., all that part of my land lying on the N. East Side of the Mill Road, commencing at a cedar post near the Bark factory and running down to the Beaver-dam branch to a cedar post, to her, her heirs and assigns forever. Item, I give and bequeath to my well beloved son Samuel and to my well beloved daughter Margaret Prettyman all the residue of my real estate, to them, their heirs and assigns forever, to be equally divided between them."

All the real estate of the testator was embraced in two tracts, the house and lot where he resided, situated on the south west side of the Mill road mentioned, and another and larger tract in one body of land lying on the north east side of that road, and separated by it from the house and lot referred to, consisting of about one hundred and fifteen acres, and which was to be divided by the line designated in the will into two parts, one of which is in the first place devised to his daughter Elizabeth S., and the other, as the residue of his real estate, is devised to his son Samuel and his daughter Margaret, to be equally divided between them. It was shown by the plots and pretensions that the division line designated in the will, commences on the Mill road near the eastern terminus of

42

it, running straight in nearly a due north west course length wise through the entire body of the tract, and divides it into two unequal parts, the part on the south west side of the line and lying between it and the Mill road, containing about forty eight acres, and other part lying on the other or north east side of the line, containing about sixty seven acres. The testator died in 1845 and his widow in 1869, leaving all the devisees in remainder to survive her, between whom no partition of the tract had been made under the will, or otherwise. Hickman, the plaintiff below, who had succeeded by purchase to the one undivided half part of his son Samuel Prettyman in all the residue of the real estate devised to him and his daughter Margaret Prettyman, to be equally divided between them, claimed in right of Samuel under his purchase and as tenant in common with Margaret, the one undivided moiety of the part lying on the north east side of the division line designated in the will, and containing the largest number of acres of the two tracts, and the action below was brought by him to recover it; whilst Carson, the defendant below and tenant in possession, and the husband of the daughter Elizabeth, resists the claim and contends that the whole of that part of it, is the part devised to her in severalty in the will.

On the trial of the case before the jury the defendant below called a witness to prove that the testator intended in his will to devise the part of the tract lying on the northeast side of the line of division indicated in it, by declarations made, as well as acts done by him in regard to the matter, after the making of his will, and contended that if there was any uncertainty as to his intention in respect to it arising in the case, it constituted a latent ambiguity, and, therefore, the evidence he proposed to introduce, was admissible to explain and remove it. This was objected to and denied by the counsel on the other side, and the court after argument excluded the evidence offered on the ground that it was not admissible; and to that decision of the court below the bill of exceptions in this case was taken.

*Cullen,* for the plaintiff in error.   The first thing that would appear on reading the will was the certainty that the testator intended to devise and dispose of all his real estate by it; and in the next place, that he intended to devise to his daughter Elizabeth, the house and lot mentioned in the first devise to her, and also a part of his land lying on the opposite, or northeast side of the Mill road. But all his land, except the house and lot before devised to her, was then lying on the northeast side of the Mill road, and in one body with nothing to divide it, or to mark a prospective division of it, except the two cedar posts planted on the outlines of it, between which he directs the line of division to be run and made as indicated in the second devise to her.   And on the face of the will itself, and without looking away from it for some thing else wholly beyond it, no one could possibly discover or detect any uncertainty whatever as to the intention of the testator in respect to it.   Indeed, it no where appears in the will itself, that all the residue of· his real estate after disposing of his house and lots in the first devise to her, was lying on the northeast side of the Mill road, or that even the whole of that part of his land mentioned in the second devise to her, was lying in one body on that side of it; and no reader on carefully perusing the will, he did not care who he might be, could discover, òr even suspect any uncertainty in the meaning of it, or as to the intention of the testator in the devise contained in it to his daughter Elizabeth, until he is otherwise informed that the whole of that part of his land, as well as all the residue of his real estate, was then lying in one body on the northeast side of that road.   And if that was the case, could there then be any uncertainty as to the meaning or intention of the testator in respect to the matter, apparent upon the face of the will, or the devise itself?   There could not be such an idea as that suggested by the will itself to any one reading it without such extrinsic knowledge or information; and that constituted the true test between a patent and a latent ambiguity, particularly in a will.   The former can never

be explained, aided, or remedied in any manner by parol evidence, whilst the latter always may be. In this case there was no uncertainty apparent upon the face of the devise, and none had been discovered, or could be discovered, until we come to apply it to the subject matter of it, the part of the land specifically designed to be devised by it, and to inquire and ascertain by subsequent information from other sources, not only the facts which he had before mentioned, but even, the location of it with reference to the cardinal points of the compass : and that in his judgment clearly constituted it a latent ambiguity, and rendered admissible for the purpose of explaining and removing it, the parol evidence which the court below had excluded. 2 *Rob. on Wills* 15. 1 *Jarm. on Wills* 352, 371. 2 *Redf. on Wills* 577, 584. *Miller v. Travers,* 21 *E. C. L. R.* 288. *Piesch v. Dixon,* 1 *Mason* 9. *Ely v. Adams,* 19 *Johns.* 313. *Wigr. on Wills* 7. 1 *Greenl. Ev. secs.* 289, 290. *Parsons v. Parsons,* 1 *Ves. Jr.* 266. *Thomas v. Thomas,* 6 *T. R.* 671. *Pritchard v. Hicks,* 1 *Paige* 270. *Gord v. Needs,* 1 *M. & W.* 129. *Ryers v. Wheeler,* 22 *Wend.* 148. *Brown v. Thorndike,* 15 *Pick.* 388. *Hiscocks v. Hiscocks,* 5 *M. & W.* 362. *Mann v. Mann's, Executor,* 1 *Johns. Ch. Rep.* 231. *Ulrich v. Litchfield,* 2 *Atk.* 372. *Richardson v. Watson,* 4 *Barn. & Ad.* 487. *Hyatt v. Pugsley,* 23 *Barb.* 285. *Townsend v. Downing,* 23 *Verm.* 225. *Smith v. Smith,* 4 *Paige* 271. *Redf. on Wills* 673, 695.

*Layton,* for the defendant in error, was stopped by the Court.

*Bates, Chancellor.* We have interposed and stopped the counsel for the defendant in error, because we do not think it necessary that the argument of the case should be protracted by a reply on his part. He would, however, remark before the court proceeded to announce its opinion in the case, that if the words of the devise in question were sufficiently certain to indicate the intention of the testator to give to his daughter Elizabeth that part of his

land north east of the mill road commencing at the cedar post near the bark factory and extending to the cedar post in the beaver-dam branch, which lies on the north-east side of the mill road, and between it and the line directed in the devise to be run between the cedar posts, then in that view of it, there can be no ambiguity or uncertainty, either patent or latent, as to the intention of the testator in respect to the part she was to take under that devise. If, however, the terms of the devise are not sufficiently certain in themselves, to indicate without any unavoidable doubt or difficulty incapable of solution or removal by any thing contained in the will, or made part of the will itself by reference to it, (as a title paper for instance,) the intention of the testator to devise that portion of the tract to his daughter Elizabeth, but leave it so uncertain that we are not able to determine whether it was his intention to devise that, or the other portion of the tract lying on the other side of the line directed to be run between the cedar posts, and made the division line between her and the two residuary devisees in common, then the uncertainty consists in the terms of the devise itself, and is apparent upon the face of it, and therefore constitutes what is termed in law, a patent ambiguity which no parol evidence is admissible to explain or remove. But again, if no doubt arises, nor any uncertainty appears on a careful reading of the whole will, and particularly the devise in question, as to the intention of the testator in that respect, and it only arises or is presented to our perception when we come to apply the written devise to the subject matter, or the thing devised by it, still it is even then, not such a latent ambiguity in our opinion, as will admit of parol evidence to explain it, by showing which one of the two parts or portions of the tract directed to be divided by the line designated by him, the testator intended to devise to his daughter Elizabeth, because the terms of description employed in the will with respect to it, are too uncertain, imperfect and insufficient to ascertain and determine which one of the two the testator intended to give her, without

adding further words of description to them by parol proof of declarations made by the testator after the execution of his will of what his intentions were at the time of making it with respect to that matter. Contemplated in either aspect, the parol evidence offered in the case on behalf of the defendant below was, therefore, inadmissible. Owing, however, to the general and indefinite character of the declaration and pleadings in actions of ejectment, it was expedient and desirable to have the issue in the case more precisely presented on the record of the pleadings, by a distinct understanding between the parties and some amendment of them before the court proceeded to announce its opinion, and to direct judgment to be entered in the case.

He then inquired of the counsel for the plaintiff below, which one of the parts of the tracts north-east of the mill road in dispute, the plaintiff claimed to be entitled to, in right of the testator's son Samuel under his purchase, and as tenant in common now with his daughter Margaret, and for which the action had been prosecuted; to which he replied that the plaintiff's claim and action was for the one undivided moiety or half part of that portion of the tract mentioned, which lies on the north-east side of the division line directed by the testator in the devise to be run between the cedar posts referred to in it, and estimated to contain about sixty seven acres. To a similar inquiry addressed by him to the counsel for the defendant below, he replied that the defendant was claiming and defending the action for the same portion as devised and intended to be devised by the testator in its entirety and in severalty to his daughter Elizabeth; and thereupon the consent rule was by the agreement of counsel so amended upon the record, as to show that such was the issue in the case.

HOUSTON, J., announced the opinion of the Court. Upon the trial of this case in the court below, before Chief Justice Gilpin, Judge Wales and myself, we were all of opinion that whether the uncertainty, then as now in question,

constituted a patent or a latent ambiguity in contemplation of law, the evidence which the defendant proposed to introduce for the purpose of explaining it, was not admissible. It seemed to be conceded, however, on both sides, that there was an uncertainty in fact, involved in the devise in question, as to which one of the two portions into which the testator directed all that part of his land lying on the north east side of the mill road, to be divided by the line designated in the devise, he intended to give by it to his daughter Elizabeth, and also, of course, as to which of them he designed to devise, as the residue of his real estate, to his son Samuel and daughter Margaret, to be equally divided between them; and the only question presented for our consideration in regard to it, was whether it properly constituted a patent, or latent ambiguity.   But a more critical and careful examination of the words of the devise has since satisfied us, and also this court, that there is in fact, no uncertainty or ambiguity of either kind necessarily involved in the terms of it, when the precise language of it is read and considered with proper care and attention by us.

We know from the plots and pretensions laid down on both sides, that the house and lot where the testator resided at the time of making his will, and given in the first devise to his daughter Elizabeth, is situated on the south side and at the eastern terminus of the mill road mentioned in the next and second devise to her, the words of which are as follows: "Item, I give and bequeath to my aforesaid daughter Elizabeth S. all that part of my land lying on the N. East side of the Mill Road, commencing at a cedar post near the Bark factory and running down to the Beaver-dam branch to a cedar post, to her, her heirs and assigns forever."   All his land, except the house and lot first mentioned, we learn from the same source, was then lying in one body on the north-east side of that road, and which constituted the south-west boundary of the whole of it.   The line directed to be run commencing at the first and ending at the second cedar post

mentioned, we also learn from the plots and pretensions, would extend from the mill road at a point nearly opposite to the house in which he then resided, in nearly a north-west direction across the whole tract as far as the beaver-dam branch, at least, and would leave all the portion separated or divided by it, from the residue of the tract, "lying on" the north-east side of that road, and butted and bounded entirely by it on its south-west border; whilst the residue of the tract so separated or divided from it, would not then be "lying on" the north-east side of the mill road, although that part of it would still be lying to the north eastward of it, but not *on* it. And this distinction and the particular import of the words "all that part of his land lying on the north-east side of the mill road," when so severed and separated from the residue of the tract as contemplated and directed by the testator at the time of making his will, and with his mind's eye upon the land itself, was not sufficiently perceived or observed by us on the trial of the case below, to see or understand it as clearly and distinctly as he doubtless saw it and understood it when the will was written and executed by him; and hence the doubt and uncertainty which seemed for the time so completely to envelop and obscure the meaning of the words and the intention of the testator in regard to the matter and the devise in question. In reading and ascertaining the meaning of terms of description employed in a devise so concise as this is, it is particularly necessary for us, we think, to place ourselves for the time in the situation of the testator when making his will, and to view the matter and the description of the portion of the tract which he intended to give to his daughter Elizabeth, as he probably viewed it at the time and considered what would be the correct and proper description of it, when severed from the residue of it by the division line thus directed to be run by him. Nor are we inclined to attach undue importance to the particular meaning and import of the words "lying on" the north-east side of the mill road, or more than the law itself requires us in such a case

to give to them; for there is no doubt that when those words are used in such a connection, or in any instrument in the description of the metes and bounds and location of land, they import in law, as well as in fact, that it extends to, and borders upon the boundary designated in the description; and which in this case would have the effect to locate the portion intended to be devised by him to Elizabeth, as adjoining to and bounded immediately by the north-east side or line of the mill road and no other; and according to the plots and pretensions we find that it borders or lies on no other road whatever in any portion of its outlines, whilst the residue or other portion of it, borders on another road equally as public and as much traveled, to nearly the same extent as on the mill road, but which cannot be properly described as "lying on" the "north-east side" of either of them.

With this interpretation given to the devise in question, we think the meaning of the words and the intention of the testator as expressed in them become quite clear and certain even on the face of the devise itself, and enable the court without any doubt or difficulty to sustain it. On the contrary, if we turn from this view and consideration of it, and attempt to apply the terms of description to the other portion, or residue of the tract, the meaning and intention of the testator becomes at once involved in so much doubt, obscurity and uncertainty, as to render it absolutely impossible upon the face of the devise, or from any thing contained in the will itself, to ascertain and determine which of the portions of it he intended to give to Elizabeth, or which of them he intended to give as the residue of it, to Samuel and Margaret to be equally divided between them; and which would have the effect, inasmuch as we have already decided that the parol evidence offered is not admissible to explain the ambiguity of the devise in question to his daughter Elizabeth when viewed in that aspect of it, to render both of the devises absolutely void for uncertainty, we consider that the maxim of law which applies with great propriety in the construction of such an

43

instrument, *ut res magis valeat quam pereat*, requires that we should give the former interpretation and construction to it; and hold that the devise in question, gives to the testator's daughter, Elizabeth, that part of his land referred to which when severed or divided from the residue of it by the line designated in the devise, lies on and adjoins the northeast side of the Mill Road, and which contains according to the surveys, plots and pretensions returned in the case in the court below, forty-eight acres more or less. The decision of the court below on the question of evidence presented in the bill of exceptions is, therefore, affirmed.